counted the tiers of barrels, and then and there estimated the quantity on the premises at two thousand five hundred barrels; and twelve others, equally intelligent and capable of observation, had sworn that they, too, went there for a like purpose; and, after diligent search, could find only some twenty-five in all, some of them working in the rooms, others storing property in them, and still others removing floors from the very apartments where these conflicting oaths located the greatest amounts of whisky, then there would be no room for reconciliation, or charity. The conflict would be too gross to call it misapprehension. Perjury beyond all doubt would have been committed. But you have no such case before you. Neither party professes to have made an estimate then and there, with the property before them, but each witness relies upon recalling what he had neither duty nor interest to observe at the time, and make measurements, and form opinions as to the quantities, only from what he remembers of the past. There is much liability for mistake on both sides in all such instances. Had this case been less important, and the expense and trouble of its retrial less, I am not at all certain but that I should have excluded this testimony altogether, trusting that a higher court would have upheld my decision in reference to what I concede would be a new step in practice. And now, gentlemen, in view of this state of facts, what should be your application of the rule of law that doubts should be resolved against the defendants? You certainly, it would seem to me, will be unable to fix, with entire confidence, upon any specific amount of whisky on hand in October, 1865. It certainly presents a case where you cannot say but there is doubt. It is a doubt in the power of the defendant to remove. If he does not do so, the law pronounces what your duty is. (Here the court called for the mash-book kept by the defendants.) There is a matter, which at one time I had though I was at liberty to omit, but subsequent reflection has convinced me that it is my duty to call your attention to it. If you believe that there have been any additions made, by or with the concurrence of the defendants, to this book, for the purpose of creating proof contrary to the truth, it also, perhaps, in an equal degree with any other facts in the case, raises a strong presumption against them. Here is an entry at the foot of the page: "Stopped this day; 2,056 barrels on hand in cribs and building." That is wholly exceptional. There is no other entry in the book like it. Its whole theory seems to be at war with the entry. You will observe the first one, which says 227 barrels on hand, is but a few months before, in December, 1863. Why "in cellar" should be added to several of these entries, when at this very period it is claimed there were several thousand barrels in the other departments, is not shown. By looking back in the book you will find blanks left all the way through, where these entries in red ink might have been made for any distance back. It is just in this period that the exceptional entry is made, and nowhere else; and to that I deem it my duty particularly to call your attention.

Gentlemen, a long experience of thirty odd years at the bar, in the contests of which I have always entered with very considerable zeal, must necessarily have fixed upon me the habit of earnestness, and, in some degree, unfitted me for concealing those proclivities which it is impossible for any intelligent judge not to have when he tries a case. In going over the facts in this compendious way, simply for the purpose of applying the abstract principles of law, which it is my sworn duty to state to you, I may, unconsciously, and I doubt not I have, more or less, indicated which way, were I a juror, I would find. But that is your province. If, in my zeal, I have, unconsciously, bowed a little too far over the fence which separates the field of your labors from mine, it is no disrespect for you to bow back again in the full consciousness that its cultivation is alone for you. That it is so I concede most fully, and do not ask the slightest consideration on your part for anything I may have said, which intimates what your duty in that regard should be. But as to the principles of law, and the presumptions which it makes from ascertained facts and conceded conditions, these you will take from the court, and inexorably apply, as they have been given you in charge.

The jury rendered a verdict for the government, and assessed the damages at $235,680.

[NOTE. From the judgment entered in this case a writ of error was sued out in the supreme court. Mr. Justice Field, in delivering the opinion of the court, said: "The instruction sets at naught established principles, and justifies the criticism of counsel that it substantially withdrew from the defendants their constitutional right of trial by jury, and converted what at law was intended for their protection—the right to refuse to testify—into the machinery for their sure destruction." The judgment was reversed, and the case remanded. 18 Wall (85 U. S.) 516.]

## Case No. 14,775.

UNITED STATES v. CHAFLIN.

[See Case No. 14,798.]